UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
:
**MELBA SANABRIA,** *as Administrator of the Estate of Jacob Emmanuel Almonte*,
:
Plaintiff,      :   **MEMORANDUM DECISION AND ORDER**
:
– against –    :   23-CV-558 (AMD) (JAM)
:
**CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT; MANISH SHARMA; KAREEM HUSAINI; JAMES YOST;** and **GINA GAO**,
:
:
:
Defendants.    :
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action as the administrator of her son Jacob Almonte's estate. She claims that police officers used excessive force and detained her son unlawfully on March 13, 2022. Before the Court is the defendants' motion for summary judgment on the unlawful detention claim. For the following reasons, the defendants' motion is denied.

## BACKGROUND

On March 13, 2022, a 911 caller reported that someone was sleeping in a parked car in Queens. (ECF No. 30-1, Defendants' Rule 56.1 Statement ("Defs. 56.1") ¶ 1; ECF No. 30-2, Plaintiff's Rule 56.1 Counterstatement ("Pl. 56.1") ¶ 1.) Police officers Kareem Husaini and Manish Sharma responded to the call at about 7:00 a.m.; an Emergency Medical Services ("EMS") team also arrived. (ECF No. 30-1, Defs. 56.1 ¶¶ 2–3; ECF No. 30-2, Pl. 56.1 ¶¶ 2–3.) The two officers found Jacob Almonte asleep in the driver's seat of a parked car. (ECF No. 30-1, Defs. 56.1 ¶¶ 3–4; ECF No. 30-2, Pl. 56.1 ¶¶ 3–4.) According to the defendants, the car engine was running; the plaintiff says that it was not. (ECF No. 30-2, Pl. 56.1 ¶ 4.) The officers

asked Mr. Almonte to get out of the car.  (ECF No. 30-1, Defs. 56.1 ¶ 5; ECF No. 30-2, Pl. 56.1 ¶ 5.)  Mr. Almonte complied, and the officers asked him questions.  (ECF No. 30-1, Defs. 56.1 ¶¶ 5–6; ECF No. 30-2, Pl. 56.1 ¶¶ 5–6.)

The officers claim that Mr. Almonte was "displaying signs" of a "mental health crisis;" his speech was "disorganized," he "raised his voice when it did not seem appropriate," and he was "disoriented and confused."  (ECF No. 30-1, Defs. 56.1 ¶¶ 6–8; ECF No. 30-2, Pl. 56.1 ¶¶ 6–8.)  According to the defendants, this behavior was evidence that Mr. Almonte posed a threat to himself or others.  (ECF No. 30-1, Defs. 56.1 ¶ 9; ECF No. 30-2, Pl. 56.1 ¶ 9.)  The plaintiff disputes this and cites Officer Sharma's deposition testimony about the "Aided Report" he completed after the encounter; in that report, he stated that that Mr. Almonte did not try to hurt himself or anyone else, he did not threaten anyone, and he did not put himself in a "dangerous situation."  (ECF No. 40-3, Exhibit C, Sharma Deposition Transcript ("Sharma Dep.") at 97–03.)  Officer Sharma activated his body worn camera when Mr. Almonte was out of the car and talking with the officers.  (ECF No. 46, Officer Sharma Body Camera Footage ("Sharma Body Cam").)[1]

The EMTs told the officers that Mr. Almonte should be evaluated at a hospital.  (ECF No. 30-1, Defs. 56.1 ¶ 11; ECF No. 30-2, Pl. 56.1 ¶ 11.)  The officers asked Mr. Almonte to come with them, but he tried to go into a smoke shop.  (ECF No. 46, Sharma Body Cam at 00:00–01:07; *see also* ECF No. 30-1, Defs. 56.1 ¶ 12; ECF No. 30-2, Pl. 56.1 ¶ 12.)[2]  He continued to pull away from the officers and Officer Husaini grabbed his arm and called for

---

[1] The plaintiff provided the Court with body camera footage for Officer Sharma and six other officers, as well as seven different security camera videos.  (ECF Nos. 46 and 47.)  For ease of reference, the Court cites to ECF No. 46 and describes the specific video being cited.

[2] Officer Sharma's body camera started recording audio when Mr. Almonte tried to go into the smoke shop.  (ECF No. 46, Sharma Body Cam at 00:59.)

2

backup. (ECF No. 46, Sharma Body Cam at 01:00–01:15; *see also* ECF No. 30-1, Defs. 56.1 ¶¶ 14–15; ECF No. 30-2, Pl. 56.1 ¶¶ 14–15.) At that point, Mr. Almonte asked, "Am I being detained?" (ECF No. 46, Sharma Body Cam at 01:05–01:10.) One of the officers replied, "Yes, you're being detained." (*Id.*) When Mr. Almonte asked, "For what?" one the officers said, "Taser, taser." (*Id.* at 01:12–01:14.) As Mr. Almonte asked why he was "being tased," Officer Sharma tased him. (*Id.* at 01:14–01:20; *see also* ECF No. 30-1, Defs. 56.1 ¶ 16; ECF No. 30-2, Pl. 56.1 ¶ 16.) Mr. Almonte fell to the ground, screaming, "That shit hurts bro. What did I do?" (ECF No. 46, Sharma Body Cam at 01:15–01:36; *see also* ECF No. 30-1, Defs. 56.1 ¶ 18; ECF No. 30-2, Pl. 56.1 ¶ 18.) Once again, someone said, "Taser, taser," and Mr. Almonte screamed, "I'm listening! I'll stop!" (ECF No. 46, Sharma Body Cam at 01:36–01:58.) Officer Sharma tased Mr. Almonte again, and Officer Husaini handcuffed him. (ECF No. 30-1, Defs. 56.1 ¶¶ 19–20; ECF No. 30-2, Pl. 56.1 ¶¶ 19–20.) The entire encounter — from the time the officers arrived at the car to the time Husani handcuffed Mr. Almonte — lasted less than ten minutes. (*See* ECF No. 46, Sharma Body Cam at 00:00–02:00; ECF No. 46, Surveillance Video 1 at 00:00–04:31; ECF No. 46, Surveillance Video 3 at 00:00–4:30.)

The EMTs took Mr. Almonte to Queens General Hospital, where doctors diagnosed him with bipolar affective disorder, mania, and substance abuse. (ECF No. 30-1, Defs. 56.1 ¶¶ 21–24; ECF No. 30-2, Pl. 56.1 ¶¶ 21–24.)[3] He was admitted to the hospital's Comprehensive Psychiatric Emergency Program, and discharged the next day, on March 14, 2022. (ECF No. 30-1, Defs. 56.1 ¶¶ 25–26; ECF No. 30-2, Pl. 56.1 ¶¶ 25–26; ECF No. 40-4, Exhibit D, Queens General Hospital Records ("Queens Gen. Records") at 26.)

---

[3] Testing showed that Mr. Almonte had taken cocaine and opiates, among other substances. (ECF No. 30-1, Defs. 56.1 ¶ 24; ECF No. 30-2, Pl. 56.1 ¶ 24.)

3

Four days later, Mr. Almonte's girlfriend found him unresponsive in his bed. (ECF No. 30-1, Defs. 56.1 ¶ 27; ECF No. 30-2, Pl. 56.1 ¶ 27.) Mr. Almonte was taken to the hospital and pronounced dead on arrival; a medical examiner later determined that he died from a drug overdose. (ECF No. 30-1, Defs. 56.1 ¶¶ 27–29; ECF No. 30-2, Pl. 56.1 ¶¶ 27–29; ECF No. 40-5, Exhibit E, Interfaith Medical Center Records ("Interfaith Records") at 5; ECF No. 40-6, Exhibit F, Autopsy Report at 3.)

The plaintiff filed this lawsuit on January 25, 2023, (ECF No. 1), and amended her complaint on September 27, 2023 (ECF No. 12). She brings claims against Officers Husaini and Sharma for excessive force and unlawful detention. (*Id.*)[4] The defendants move for summary judgment on the unlawful detention claim. (ECF No. 39.)

## LEGAL STANDARD

Summary judgment is appropriate if the parties' submissions — including pleadings, deposition transcripts, affidavits, and other material in the record — show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant has the burden of demonstrating that no material fact is genuinely in dispute. *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). "A fact is material if it might affect the outcome of the suit under the governing law," and a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v.*

---

[4] The plaintiff initially brought claims against Officers Husaini, Sharma, Gina Gao, and James Yost, and the New York Police department for unlawful detention and excessive force, and against the City of New York for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). At the November 21, 2024 pre-motion conference, the plaintiff agreed to drop her *Monell* claim against the City of New York. (ECF No. 41 at 5 n.1.) On January 22, 2025, the parties informed the Court that they had "negotiated the voluntary dismissal of defendants Yost, Gao, and the NYPD." (ECF No. 36.)

4

*City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Summary judgment is appropriate only if "on the record presented, considered in the light most favorable to the non-moving party, no reasonable fact-finder could find in its favor." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (alterations adopted) (quoting *Capobianco v. City of N.Y.*, 422 F.3d 47, 54–55 (2d Cir. 2005)). The question is not whether "the evidence unmistakably favors one side or the other but whether a fair-minded fact-finder could return a verdict for the non-moving party on the evidence presented." *Id.* (alterations adopted) (quoting *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005)).

## DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. "[A] claim challenging pretrial detention [falls] within the scope of the Fourth Amendment," *Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017), and "adheres whether the seizure is for purposes of law enforcement or due to an individual's mental illness," *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016). "To handcuff and detain, even briefly, a person for mental-health reasons, an officer must have 'probable cause to believe that the person presented a risk of harm to [himself] or others.'" *Id.* (quoting *Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir. 2001)); *accord Guan v. City of New York*, 37 F.4th 797, 805 (2d Cir. 2022). "[T]o determine whether a mental-health seizure is justified by arguable probable cause, a court must review the specific observations and information available to the officers at the time of a seizure." *Myers*, 819 F.3d at 633 (citing *Kerman*, 261 F.3d 241). "At the summary judgment stage, '[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the

5

pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute.'" *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 518 (E.D.N.Y. 2021) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).

The defendants argue that Officers Husaini and Sharma had probable cause to arrest Mr. Almonte for mental health reasons because he was "passed out in the driver's seat" of a parked car, and behaved and spoke erratically. (ECF No. 41 at 9–10.) In addition, the defendants say, the officers "relied on EMS's observations" that Mr. Almonte was unfit to drive and should be taken to the hospital. (*Id.* at 10; *see also* ECF No. 30-1, Defs. 56.1 ¶ 11.)

The plaintiff responds that Mr. Almonte's behavior "may have been unusual or irrational," but there was "no evidence [to] suggest[] he threatened violence or exhibited behavior likely to cause serious harm." (ECF No. 45 at 8.) The plaintiff also cites Officer Sharma's testimony about his "Aided Report," in which he wrote that the plaintiff did not threaten or try to hurt anyone, or place himself in a dangerous situation. (*Id.*; *see also* ECF No. 40-3, Sharma Dep. at 101–03.) As for the EMTs, the plaintiff says that they "merely recommend[ed] evaluation;" they did not determine that Mr. Almonte was dangerous. (ECF No. 45 at 9.) According to the plaintiff, a jury should "assess whether the officers' reliance on EMS was reasonable." (*Id.*)

The disputes of material fact in this case preclude a grant of summary judgment. The parties disagree about whether the car was running when the police arrived, which is an issue in assessing the extent to which Mr. Almonte posed a danger to himself or to the public. (ECF No. 30-2, Pl. 56.1 ¶ 4.) Significantly, too, Officer Sharma wrote in a report shortly after the encounter that Mr. Almonte did not try to hurt himself or anyone else, did not threaten anyone, and or put himself in a "dangerous situation." (ECF No. 40-3, Sharma Dep. at 101–03).

6

Although the defendants say that Mr. Almonte's speech and behavior provided probable cause, the body-worn camera footage shows that while Mr. Almonte appeared somewhat dazed, he was not incoherent or irrational, at least at the point where he was talking with police in front of the smoke shop.  He asked the officers if he was "being detained," and when an officer said that he was, he asked, "For what?"  (ECF No. 46, Sharma Body Cam at 01:05–01:14.)  Even after the officer tased him the first time, Mr. Alonte asked what he had done.  (*Id.* at 01:15–01:36.)  When someone said "Taser, taser" again, Mr. Almonte said he would "stop" and that he was "listening."  (*Id.* at 01:36–01:58.)  A jury could conclude that these were rational responses to what was happening.

To the extent that Mr. Almonte's behavior and speech were erratic before the recording started, erratic behavior or speech, standing alone, does not establish probable cause.  *See Myers*, 819 F.3d at 634 ("A person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others.").  A jury is in the best position to consider all this evidence, especially since there is video of part of the defendants' encounter with Mr. Almonte, which jurors can use to determine whether and to what extent Mr. Almonte was dangerous, and thus whether the defendants had probable cause to detain him.

Courts have declined to grant summary judgment in similar cases.  In *Bryant v. Steele*, 462 F. Supp. 3d 249, 261–62 (E.D.N.Y. 2020), *aff'd sub nom. Bryant v. Iheanacho*, 859 F. App'x 604 (2d Cir. 2021), the Honorable Arthur Spatt denied summary judgment despite compelling evidence of dangerousness, including that Bryant not only behaved bizarrely, but had four rifles, and bleach bottles with "holy water" written on them.  Judge Spatt concluded that a jury should resolve the disputes about "whether [the plaintiff] threatened to use . . . firearms . . . whether the bottles in his car contained bleach . . . [and] the extent of his paranoia."  *Id.*; *see also*

7

*Greenaway v. Cnty. of Nassau*, 97 F. Supp. 3d 225, 234 (E.D.N.Y. 2015) (denying summary judgment because the defendants did not "show or even allege that [the plaintiff's] behavior included threats of or attempts at suicide or bodily harm to himself[,] [n]or [did] they show that his behavior placed others in reasonable fear of serious physical harm"); *Todd v. New York City Health & Hosps. Corp.*, No. 16-CV-2124, 2021 WL 1238822, at *5 (E.D.N.Y. Mar. 31, 2021) (denying summary judgment on unlawful detention claim because of disputed facts about whether the plaintiff posed a credible threat to the arresting officers and whether her refusal to grant access to her apartment constituted a fire hazard). Thus, "[d]rawing all justifiable inferences in the favor of the Plaintiff, the Court holds that the undisputed facts do not merit a finding of probable cause to" seize Mr. Almonte on mental health grounds. *Bryant*, 462 F. Supp. 3d at 262.

In the alternative, the defendants argue that they are entitled to qualified immunity on the unlawful detention claim. (ECF No. 41 at 11–12.) Whether an officer is entitled to qualified immunity is a "mixed question of law and fact." *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) (citation omitted). "Where there is no material factual dispute, it is appropriate for the district court to assess the reasonableness of the defendants' conduct under the circumstances presented and to rule on qualified immunity at the summary judgment stage." *Anderson v. City of New York*, 817 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) (citation omitted). However, where "there *is* a dispute regarding the material facts, 'the factual questions must be resolved by the factfinder.'" *Id.* (emphasis in original) (quoting *Kerman*, 374 F.3d at 109).

As explained above, there are material factual disputes about whether the officers had probable cause. Accordingly, "the Court may not rule on qualified immunity at this stage of the

8

litigation." *Bryant*, 462 F. Supp. 3d at 262 (citing *Myers*, 819 F.3d at 633). The defendants' motion for summary judgment is denied.

## CONCLUSION

For foregoing reasons, the defendants' motion for summary judgment is denied. The parties are directed to file a stipulation of dismissal as to Officers Gao and Yost, the NYPD, and the City of New York by August 29, 2025, and a joint pretrial order by October 17, 2025.

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                              ANN M. DONNELLY
                                              United States District Judge

Dated: Brooklyn, New York
          August 18, 2025